# RICHARD ATKIN *et al.*

## *v.*

## MINERVA MERRELL.

1. DOWER—*what character of estate subject thereto.* If the husband is seised, during the marriage, of an equitable estate in fee in lands, which would, on his death, descend to his children, that constitutes such an estate as is subject to the dower of the wife.

2. SAME—*how dower may be barred.* This right of the wife can only be defeated by her voluntary act, done in the mode pointed out by the statute. A sale or transfer of his equitable title by the husband will not have that effect, nor will the procurement of the conveyance of the land by the holder of the legal title to a third person.

3. SAME—*directions to commissioners as to the manner of allotting dower.* Where commissioners are appointed to allot dower, it is the correct and proper practice to direct them to allot and set off to the widow, by metes and bounds, according to quantity and quality, one-third part of the lands in which she is entitled to dower.

4. SAME—*whether widow entitled to rents.* The widow may retain possession of the dwelling-house in which her husband usually dwelt next before his death, together with the outhouses and plantation thereto belonging, free from molestation or rent until her dower is assigned; and if in possession, she may, no doubt, lease them and collect the rents therefor until the assignment of dower.

5. But the widow is not entitled to rents and profits as damages for non-assignment of her dower, which have accrued prior to her demand for dower and a refusal to assign the same.

6. From the time a demand is made for dower, she is entitled to damages, and the third of the rents which may have accrued after the demand, of the lands in which she has dower, would, no doubt, form their proper measure. But, until demand, she is not entitled to damages.

7. SAME—*demand for dower—what constitutes.* The commencement of a suit to obtain an assignment of dower may be regarded as a demand therefor.

8. SAME—*lien for value of dower assessed—to what land it attaches.* When dower cannot be assigned by metes and bounds, and the yearly value thereof is assessed by a jury, a judgment for such ascertained value becomes a lien or charge upon the land out of which the dower arises.

9. But when the widow is entitled to dower in separate tracts, and the yearly value thereof is assessed, the gross sum thus ascertained should not be made a charge upon all the lands, but each separate tract should be charged with the value · of the dower which arises therefrom, and not beyond that amount.

10. CROSS-BILL—*when necessary.* In a suit to enforce a claim of dower in lands, against one holding the legal title, the defendant cannot obtain affirmative relief upon an equitable lien on the premises, except upon a cross-bill.

11. ALLEGATIONS AND DECREE *must correspond.* Upon bill filed against one holding the legal title to land, in which the complainant claims dower, upon the ground that her husband, during the marriage, held an equitable estate of inheritance in the premises, it is only necessary for the court to find whether the husband did, during the marriage, hold such an estate as gave the widow a right to dower. It would be informal in such case to find that the defendant held the land merely as a trustee for the husband, the manner in which he held it not being in issue.

12. CHANCERY—*remedy to obtain title.* Merrell having the equitable title to a farm, the legal title to which was in Atkin, exchanged the same with Davenport for other real estate. Davenport did not convey to Merrell, but, without his knowledge, conveyed to Atkin, and Atkin conveyed the farm to Davenport. *Held,* that Merrell could compel Atkin in chancery to convey to him the legal title to the property for which he had exchanged with Davenport.

WRIT OF ERROR to the Circuit Court of Jefferson county; the Hon. S. S. MARSHALL, Judge, presiding.

In March, 1862, Minerva Merrell, as the widow of Nelson C. Merrell, deceased, exhibited her bill in chancery in the Circuit

Court of Marion county, for an assignment of dower in certain premises, in which she alleges her husband was seised of an equitable estate of inheritance during their coverture.

The suit was afterward removed into the Circuit Court of Jefferson county, on change of venue.

The ground of the complainant's claim is set forth in the amended bill. She alleges that she is the widow of Nelson C. Merrell, who died on the 11th of April, 1859, intestate, leaving surviving him, as his children and heirs at law, Leander T. Merrell, Ann E. Atkin, wife of Richard Atkin, and Adelia Merrell, who was a minor, and that James Bassett became administrator, *de bonis non*, of his estate.

It is alleged that Nelson C. Merrell, the husband of complainant, died seised of an equitable estate in a part of lots numbered one and two, in block number one, in square number four, in the original survey in the town of Salem, in Marion county, describing the same by metes and bounds, and which was known as the Davenport property. The complainant alleges that her husband was in possession and receiving the rents of said premises for some time previous to, and at the time of, his death, and in his own right; that the said Richard Atkin claims to be the owner of these premises, but the complainant denies that his claim is valid, in equity, and alleges they are subject to her right of dower.

It is alleged, in the bill, that the equitable right of Nelson C. Merrell in the premises arose as follows: The said Merrell, in his life-time, about December, 1858, or March, 1859, having acquired the right to a certain farm, known as the Atkin farm, which Atkin traded to Merrell for a certain mill property, known as the Merrell mill; traded the Atkin farm to one John V. Davenport, for the said Davenport property, to which Davenport held the fee simple title, and also a stock of dry goods of said Davenport and one S. A. Nelms; that in the trade of the Atkin farm, between Merrell and Atkin, there being an incumbrance thereon of $700, Atkin did not make a deed therefor to Merrell, and had not done so at the time of the said trade with Davenport for the Davenport property, it being

agreed between the parties, Merrell, Davenport and Atkin, that Davenport should not make a deed to Merrell for the Davenport property until Atkin should have removed the incumbrance of $700 from the Atkin farm.

The complainant charges that Davenport, being satisfied that Merrell was entitled to and owned the Atkin farm, yet preferred to give his bond for a deed to the Davenport property to Atkin, as having the legal title to the Atkin farm, as before stated, rather than to Merrell; and accordingly, with the consent of Merrell and Atkin, gave his bond for a conveyance of the Davenport lots to Atkin; it being understood between Davenport, Merrell and Atkin, that Merrell would be entitled, in his own right, to the conveyance of the Davenport property as soon as the said incumbrance of $700 should be removed by Atkin from the Atkin farm, and that the deed for the Atkin farm should be made to Davenport when said incumbrance should be removed, and thus Atkin had the ostensible legal title to the Atkin farm, and the apparent right to the deed for the Davenport property under the said bond, though the real title, in equity, was in Merrell, as to the Atkin farm and the Davenport property. And, thereupon, Davenport gave possession of the Davenport property to Merrell, as the real owner of the same. The complainant therefore charges that Atkin was, in equity, a mere holder and simple trustee of Merrell in the bond for the conveyance of the Davenport lots, and retained the legal title in the Atkin farm, as trustee, until the said incumbrance was removed.

It is alleged that Merrell remained in possession of the Davenport property until his death, with the consent of Davenport and Atkin.

That after the death of Merrell, Atkin paid off the incumbrance on the Atkin farm, and, having the legal title thereto, conveyed the same to Davenport, and obtained from Davenport a conveyance of the Davenport lots, claiming the right thereto under the bond mentioned; this conduct on the part of Atkin, as is alleged, being in fraud of the rights of the complainant and of the heirs of Merrell.

It is alleged in the bill that Atkin is now in reception of the rents of the Davenport property, and has received rents therefor to about the sum of $200, which the complainant prays Atkin may make discovery of, claiming that the said rents belong to her until her dower shall be assigned in the property out of which they have arisen.

The complainant further alleges in the bill, that her husband, in his life-time, and during the coverture, was seised in fee simple of the following town lots; in the town of Salem : lots five, six and seven, in block one, in Cunningham's addition to Salem ; also of the north half of lots three and six, in block four, in T. B. Lester's addition to Salem.    That John H. Morgan and William W. Morgan, trading under the firm and style of J. H. & W. Morgan, claim the same under a sale thereof under execution, in the life-time of said Nelson, but that their claim is subject to the complainant's right of dower in the premises.

The bill makes the parties in interest defendants, and prays that the complainant's dower be allotted to her in the premises, that an account of rents be taken, and that a receiver be appointed to receive and collect them, and for general relief.

Atkin answered the bill, admitting the complainant is the widow of Nelson C. Merrell, but denies that she is entitled to dower in lots one and two, as claimed in the bill.

The answer represents the title of those lots to be in this condition : That the deed was executed by Davenport to Atkin, for the reason that, prior to the 24th of March, 1860 (the date of the Davenport deed), Atkin and Merrell had bargained together for an exchange and purchase of property, as follows : Atkin was to convey to Merrell his farm, at the value of $6,000 ; and paid Jennings' claim on mill, $1,632 ; cash advanced to Atkin & Co., for Merrell, $1,272.62 ; and cash advanced to Merrell, $605.11 ; in all, the total value of $9,509.73—for which Merrell agreed to sell and convey, free from all incumbrance, one mill, at $6,420 ; certain personal property, which is described, amounting to $940.41 ; Marshall tract, eighty acres, $1,600 ; and two lots in Cunningham's addition to Salem, $350 ;

total, $9,340.41, which left a balance of $199.32 due to Atkin, which Merrell agreed to pay.

At the time this bargain was made, no deeds were passed; but Merrell and his wife did convey, by warranty deed, dated 24th of January, 1859, an eighty acre tract lying in Marion county, known as the Marshall farm, and lots six and seven in Cunningham's addition to Salem—the mill property.

The answer states that the farm of respondent was incumbered to the amount of about $700, which the respondent was to satisfy; and the Marshall tract was under mortgage for over one thousand dollars, executed by Nelson C. Merrell and wife to Samuel C. Davis & Co.; and the two lots, six and seven, in block one, in Cunningham's addition, were also under the lien of a judgment against said Merrell in the Circuit Court of Marion county, in favor of J. H. & W. W. Morgan, which liens said Merrell was to pay off and satisfy.

That, soon after these agreements were made, said Merrell bargained the Atkin farm to Davenport in exchange for a stock of goods, and perhaps other property, and also part of lots one and two in square four aforesaid; and desired that respondent, Atkin, would execute the deed to Davenport for the Atkin farm, in December, 1858. But respondent, knowing that the lots six and seven, in Cunningham's addition to Salem, were under the lien of the Morgan judgment, and that the Marshall farm was under mortgage for the debts of Merrell, would not consent to convey at all, unless these incumbrances were paid or released. Whereupon, it was agreed by Merrell that a bond should be given by Davenport to respondent for the deed to parts of said lots one and two, to indemnify and secure respondent against loss by reason of said incumbrances on the property, which, in part, constituted the consideration of the sale of the respondent's farm.

The answer alleges that the lots six and seven were afterward, on or about the 18th of July, 1859, sold under execution issued upon the Morgan judgment, and never redeemed by Merrell, whereby respondent lost $350, the purchase-money, and whereby Merrell broke his covenants in his deed conveying

said lots to respondent. And respondent also avers that afterward, about the first of April, 1859, the Marshall tract was sold under the Davis mortgage for the debts of Merrell, and was never redeemed, whereby said Merrell also broke his covenant in his deed to respondent, and whereby respondent lost $1,600, the purchase-money thereof.

Respondent admits that by virtue of said bond of Davenport, and in compliance therewith, Davenport executed the deed to respondent to said part of lots one and two, because of the losses of the $1,950 aforesaid, and in satisfaction of the broken covenants in the deed from Merrell and wife to respondent.

Respondent admits that if Merrell had paid him the $1,950, and interest thereon, he was to reconvey to Merrell these last mentioned lots. But that this was to be considered as a conditional sale and not a mortgage. That it was not expected Merrell would pay on account of his declining circumstances.

But respondent contends that even if the court should hold the deed of Davenport to him to be a mortgage, respondent says that he advanced to Davenport the consideration for the part of lots one and two, out of his own property, which, by the failure of title of lots six and seven and the Marshall farm, Merrell and wife had never reimbursed him. And if a mortgage at all, it is a mortgage in equity for the purchase-money, and the wife of Merrell, as against said mortgage, is not entitled to dower. To this answer a replication was filed.

Other defendants filed answers to the bill, which it is not necessary to notice more particularly.

On the hearing, *James Bassett* testified on behalf of the complainant, that, in 1860, Atkin presented a claim against the estate of Merrell for a balance of $199.32. Witness was attorney for the then administrator, and asked an explanation of the account, whereupon Atkin produced the following:

Memorandum of sale of mill between N. C. Merrell and R. Atkin:

| | | |
|---|---:|---:|
| Mill, ........................................ | $6, 420 | 00 |
| Oxen, ........................................ | 100 | 00 |
| Wagon, ...................................... | 105 | 00 |
| Wood, ....................................... | 28 | 00 |
| Hay, ......................................... | 21 | 00 |
| Barrels,...................................... | 23 | 90 |
| Sacks, ....................................... | 23 | 00 |
| Logs,......................................... | 514 | 00 |
| Sundries, .................................... | 125 | 00 |
| | $7, 360 | 41 |
| Marshall farm and lots,...................... | 1, 600 | 00 |
| | $8, 960 | 41 |
| | | |
| Alkire, Calhoun & Co.,....................... | $1, 272 | 62 |
| Claim on mill,................................ | 1, 632 | 00 |
| Balance of account, .......................... | 605 | 11 |
| Atkin farm,.................................. | 6, 000 | 00 |
| | $9, 509 | 73 |
| | 8, 960 | 41 |
| | $549 | 32 |
| Lots, ........................................ | 350 | 00 |
| | $199 | 32 |

Atkin told the witness that he and Merrell had made a trade the winter before Merrell's death; that Merrell had given him the property on that paper, valued at $8,960.41, and he to Merrell that at $9,509.73; that the balance was $549.32, which was reduced by the lots at $350, which left $199.32. Atkin stated to the witness that at the time he traded his farm, there was a mortgage upon it of $700, and that he would be able to make a deed to Merrell when he paid it off. This was in June or July, 1860. Atkin further said that Merrell sold the property to Davenport; Davenport made the bond to Atkin because the Atkin farm was incumbered, that Atkin paid off

the $700, and got a deed from Davenport for part of lots one and two. That Davenport, not liking to be put to cost, made the deed to Atkin.

On cross-examination, witness stated that the Marshall farm had been sold under the Davis mortgage, and had never been redeemed from that sale; that about the time of the trade of Atkin and Merrell, Merrell and wife conveyed the Marshall farm to Atkin.

*Sandy A. Nelms* testified on behalf of the complainant as follows : In the year 1858, I think it was, I made a contract with N. C. Merrell for Davenport & Nelms, I being a member of that firm ; I think it was in October or November of that year; as near as I can recollect, the trade was this : We were to give Merrell the Davenport property, together with all the dry goods, and four hundred dollars in cash, for the Atkin farm; we gave our note for the $400; the · title to the Davenport property was at that time in John V. Davenport; I had no interest in it; the dry goods and our note for $400 passed over to N. C. Merrell; Richard Atkin was not a party to the contract; Davenport authorized me, prior to that time, to make the contract with Merrell, and sanctioned it afterward; not more than two months after the trade, Merrell went into possession. ·

*J. V. Davenport* testified : We gave Merrell the Davenport property and the dry goods, and $400, for the Atkin farm; the title to the property was in me; I never gave a deed to Merrell for the Davenport property, for the reason the Atkin farm was incumbered by Atkin to some other party ; I understood from Atkin that Merrell had authority to trade the land to me; the legal title to the farm was in Atkin ; I asked Atkin whether or not it would all be right if I traded with Merrell ; he said it would, that Merrell had the right to make the trade; Atkin wanted me to give Merrell a bond for a deed to the Davenport property when the incumbrance was removed from the Atkin farm; Atkin was to remove the incumbrance; I chose to make a bond for a deed to Atkin because the legal title to the Atkin farm was in him and not in Merrell; we

traded with Merrell, but when we closed up the papers and the bond was executed to Atkin, Merrell was not present, and did not have any thing to do with it; Merrell took possession of the Davenport property about two months after the trade was made; the bond for the deed was made to Atkin in two or three days after the trade was made; I understood from Atkin that the Davenport property was Merrell's, and he, Atkin, wanted me to give bond for deed to Merrell instead of giving it to him, but I declined for reasons above stated; I made the deed to Atkin on the 24th day of March, 1860, after the death of Merrell.

*Cross-examined:* Atkin executed the deed to me for the farm, and I executed bond for deed to him for the Davenport property, and afterward, when the farm was cleared of the incumbrance, I executed a deed to Atkin for the same. The bond for deed to Atkin, and his deed to me, were executed at the same time, two or three days after the trade was made, and the deed from me to Atkin was made in March, 1860, the land having been cleared from the incumbrance in the mean time. Possession was given to Merrell, pursuant to the original agreement, as I understood it, and Atkin did not claim any right or interest in the Davenport property at all. I believe Atkin understood the whole thing.

This was, substantially, all the evidence relating to the condition of the title to the property in which the right of dower is claimed.

Further testimony was given in relation to the rents of the property, which it is not important to notice.

At the October Term, 1863, the court below rendered a decree, finding that Nelson S. Merrell died on the 11th day of April, 1859, intestate, and possessed and seised of an equitable estate in and to a part of lots one and two, before described, known as the Davenport property; also lots five, six and seven, in Cunningham's addition to Salem, before mentioned; also the north half of lots three and six, in block four, in Lester's addition to Salem; also lot five in the same block. The decree further found that the complainant, as the widow of Nelson C. Merrell,

deceased, was entitled to one-third part of said real estate, according to quantity and quality, and the children were entitled equally to one-third part of the residue thereof.

It was further found, by the decree, that Atkin held the property called the Davenport property, in trust, and merely as a trustee, for the benefit of Nelson C. Merrell, and that complainant, Minerva Merrell, is entitled to dower therein; and, also, to dower in lots five, six and seven in block one in Cunningham's addition to Salem, and to the north half of lots three and six in block four in Lester's addition to Salem.

It was thereupon ordered that complainant have her dower assigned in said premises.

It further appearing to the court that Atkin had received a certain amount of rents and profits from the Davenport property, and that complainant was entitled to one-third part thereof, it was ordered that Atkin pay to her the sum of $206.33, being her portion of such rents.

It was thereupon decreed that the complainant was entitled to and should recover one-third of said real estate, of which her husband died possessed; and three commissioners were appointed to assign, allot and set off to the complainant, by metes and bounds, according to quantity and quality, one-third of said real estate, if the same could be done without manifest prejudice to the interests of said estate and the parties interested therein. And, if dower could not be set off, the commissioners were directed to report that fact to the court.

Subsequently, a receiver was appointed to take charge of the premises in which dower was claimed, to whom was given power to collect all rents which had already accrued, or which might thereafter become due, until final decree. The receiver collected the rents and paid over one-third thereof to the complainant; and this action of the receiver was approved by the court.

The commissioners appointed to allot the dower, having made report that the premises were not susceptible of division without great injury thereto, a jury was impaneled to assess the dower, who returned this verdict: "We, the jury, assess the dower of

the complainant at seventy-five dollars per annum in the premises."

The court thereupon decreed " that the said complainant recover said sum of seventy-five dollars annually, on the 5th day of October, 1865, and annually thereafter."

The defendants bring the cause to this court for review upon writ of error. The questions presented have reference to the character of estate which is subject to dower, and to the mode of assignment thereof.

Mr. H. K. S. O'MELVENY, for the plaintiffs in error.

In *Owen* v. *Robbins et al.* 19 Ill. 545, the rule is : If the husband, in his life-time, had such equitable title by the terms of contract for the title, that equity would decree specific performance, then the wife surviving him may have dower therein ; otherwise, not.

In this case, N. C. Merrell, the bill shows, agreed that, for the lots one and two, Davenport should give bond for a deed to Atkin ; that until Atkin released the $700 incumbrance, Davenport was bound for a deed to no one ; and it is not pretended in the bill or proof that in the life-time of N. C. Merrell, this incumbrance was released, nor in fact was it released. Therefore, in the life-time of Merrell, he was not in a position to enforce a specific performance.

But if it be held such seisin of an equitable estate of inheritance, then it is submitted that the proof justifies protection to Atkin as a mortgagee in equity. By consent of N. C. Merrell, the conveyance of these lots one and two were, by the terms of Davenport's bond, to be made to him, and by the facts proved by the defendant in error, by her witness, Mr. Bassett, the *covenant* in the deed of Merrell and wife to the amount of $1,950 of the purchase-money was broken by the judgment of the Morgans, and mortgage of Davis & Co., and which terminated in a total loss to Atkin. While the court may feel constrained to allow her dower, we complain that the decree strips Atkin of the $1,950 (for the estate is sworn to be insol-

vent, and turns this property over to the creditors and heirs generally). Atkin, it is believed, has a full equity under all the proof to be protected, at least as a mortgagee.

The court erred in rendering decree for complainant for $206, back rents.

Those lots were not the residence of deceased; his dwelling-house was not thereon; no allegation in the bill or proof that was so; and unless this were so, the widow is not exclusively entitled to the rent, nor is she entitled to any of the rents in such case. See § 27, Purp. Stat., 500; 4 Kent, marg. p. 61. She may not be charged with rent in the dwelling-house, but has no right to collect rents on other premises.

It is uncertain in the decree whether the court intended to assign dower or divide the land. The commissioners are directed to set apart one-third of the land. The statute designates no *such quantity*, but that dower shall be assigned in all the land. The specific requirement that this dower be one *third part* of the lands is error. Purp. 499, § 25.

This decree directs dower to be assigned in lots six and seven, block one, in Cunningham's addition, when the deed of Merrell and wife show that she relinquished her dower in those lots, and has not a shadow of claim upon them.

The court erred in directing the third part of the land to be assigned for dower by the commissioners.

The report of the commissioners is but the report of *two.* They do not report that they could not *assign dower*, but that the property is not *susceptible of division.* This is no report in such case, and the court erred in its approval, and ordering jury to assess dower thereon.

The verdict of the jury did not describe the property on which dower was assigned. If it will be presumed that it was the same described in the decree, then it was erroneous, for lot six, block one, in Cunningham's addition, was not subject to assessment, and the court erred in pronouncing decree on the verdict thus rendered.

The decree is erroneous in not designating in it the lands on which dower is assessed. It may be erroneous, perhaps, because

nowhere it is believed has any disposition ever been made of the receiver's report (*which was never made except by attorney*), and because it includes dower assessed upon lot six, in block one, Cunningham's addition. It does not on its face directly seem to be a decree against any one, still it is a cloud upon the title.

Mr. B. B. SMITH, for the defendant in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

We regard the doctrine as settled in this court, that an equitable estate of inheritance, in real estate, is subject to the dower of the wife. If the husband, during the marriage, is seised of an equitable estate in fee, which would on his death descend to his children, it answers the requirements of the statute giving dower, and the widow's dower can only be defeated by her voluntary act, performed in the mode pointed out in the statute. A sale or transfer by the husband in such a case can no more bar the wife's dower than in case he were the holder of the legal title. Nor can he, by procuring the holder of the legal title to convey the property to another, defeat the wife in her right of dower. It is the voluntary act of the wife alone under the statute, which produces that effect.

In this case, notwithstanding Davenport conveyed lots one and two, in block one, in square four to Atkin, it is manifest from the evidence that the property belonged to Merrell. He could have compelled a conveyance to himself by a bill in equity against Atkin had he refused to convey on a proper demand. The consideration paid for the lots was in equity the property of Merrell, and with the agreement that Atkin should so convey them. The fact that Merrell was the father-in-law of Atkin no doubt accounts for the fact that the contract was not evidenced by writing, and its proof left to depend upon verbal testimony. Although the evidence is of that character, still it satisfactorily proves that Merrell held an equitable fee

simple title in these lots which descended on his death to his heirs, and defendant in error is therefore entitled to dower in them. The question whether Atkin had an equitable lien on the premises does not arise in the case, as, if it did exist, it in no·way affects the widow's right of dower in the premises.

The farm which Atkin gave Merrell in exchange for other lands became Merrell's property, and when it was exchanged for the lots they became his, and defendant became entitled to dower in them; any incumbrance which Merrell may have imposed upon them could not affect that right. But as plaintiff in error failed to file a cross-bill in the court below, his rights, if he has any, could not be considered so as to give him affirmative relief. Still the decree was informal in finding that he held the lots merely as a trustee for Merrell; whether he held them simply in trust or incumbered by the lien which he claimed, was not a question presented by the record. It was, on the pleadings, only necessary for the court to find that Merrell, in his life-time, held such an estate in the lots as gave to the widow a right to dower in them.

We do not see that the court erred in requiring the commissioners to allot and set off to defendant in error, by metes and bounds according to quantity and quality, one-third part of this real estate. The decree of the court below has adopted the language of the twenty-fifth section of the chapter entitled "Dower," but has, in addition, directed that they shall assign to her one-third part of the premises. The first section of the chapter declares, that the widow shall be endowed of one-third part of all the lands of which her husband was seised of an estate of inheritance during the marriage, unless she shall have relinquished it in legal form. The twenty-fifth section provides for its allotment, and declares, that it shall be according to quality and quantity. The two sections require what the court decreed should be done, the allotment according to quality and quantity of one-third of the lands. This is not only not error, but is correct and proper practice. It operates as a guide to the commissioners in the performance of their duties, under the decree.

It is also insisted, that the court erred in decreeing to the widow one-third of the rents which had accrued from the property and been collected. We are aware of no law which gives a widow the rents or profits, or any part of such rents, of the lands in which she has dower, by way of damages. It is true, that the twenty-seventh section of the dower act, authorizes her in all cases to retain full and peaceable possession of the dwelling-house, in which her husband usually dwelt next before his death, together with the outhouses and plantation thereto belonging, free from molestation or rent until her dower is assigned. It only authorizes her to use and occupy these particular premises, but makes no provision for paying her rents out of other premises, or even of these, although she might, no doubt, if in possession of the dwelling-house and farm, lease them, and collect rents until her dower should be assigned to her.

The twenty-sixth section declares that when the report of the commissioners, assigning dower, shall be approved, the court shall forthwith cause the widow to have possession, by a writ directed to the sheriff for that purpose; and such widow shall, also, be entitled to reasonable damages, to be awarded to her from the time of her demand, and a refusal to assign her dower. This provision only allows damages after a demand is made for the assignment of her dower. At the common law, she was not entitled to damages before a demand, nor could she recover rents and profits until her dower was assigned her. When damages are assessed, the third of the rents of the lands in which she has dower, would, no doubt, form their proper measure, but, until a demand was made, she was entitled to no damages. The commencement of a suit to obtain an assignment of dower may be regarded as a demand, and she may, no doubt, have damages from that time until the assignment is made. In this case, however, the court below seems to have allowed, as damages, a third of the rents received prior to the commencement of this proceeding, and, in this, the court erred.

The court, likewise, erred in rendering a decree for the gross sum of her yearly dower, as a charge upon all of the lands out

of which it arises. When the commissioners report that the property is not susceptible of a division, without great injury to the property, the court is required to impanel a jury to inquire of the yearly value of the widow's dower therein, whose duty it is to assess the same. And the court is required to render a judgment that there be paid to the widow, on a day therein named, the sum thus assessed, as the yearly value of her dower, and a like sum on the same day in every year thereafter during her natural life. This judgment becomes a lien and charge upon the land in which the widow has dower, and it is but reasonable to suppose that the general assembly intended only to charge each tract with the yearly value of the widow's dower therein, and not to charge each tract with the value of her dower in all of the lands of which she is endowed. When she has established her right of dower in several tracts not susceptible of division, the court should, in the mode prescribed by the statute, ascertain the yearly value of her dower in each separate tract, and render a judgment or decree, charging it with the sum thus found, and require its payment as prescribed. When the decree is rendered for a gross sum, as a charge on all of the lands, without reference to the ownership of the several tracts, or the rights of the heirs, it necessarily works inconvenience, and, no doubt, would produce injustice. It would render the estate of but little value, as no person would be inclined to purchase portions of it thus incumbered. One heir or devisee might pay his proportion, and yet not release his share of the land from the remaining burden, and still leave it liable to sale for the delinquency of others. Such could not have been the design of the general assembly.

The decree of the court below must be reversed, and the cause remanded.

*Decree reversed.*