ANDREW RAWSON

*v.*

CLARENCE C. CORBETT, Guardian, *et al.*

*Filed at Mt. Vernon June 19, 1894.*

1. GUARDIAN—*liability for interest on money not loaned.* A guardian is liable to his wards for interest on money coming to his hands which he neglected to loan, and which might have been loaned.

2. SAME—*account, how to be stated.* Where, at the time a guardian receives a sum of money belonging to his wards, they are indebted to him in considerable amounts, and he continues thereafter to make advances for their maintenance and education, and to pay other sums of money that are charges against their estate, the correct rule for stating his account is to arrange the items thereof in chronological order, and make annual rests.

3. Where, however, the guardian fails for several years to make an inventory or annual report, and makes his final account without annual rests, and no objection is made thereto by the wards, the court may adopt the course of adding to his account such items as he should have been charged with but are omitted by him.

4. SAME—*allowance of an attorney's fee.* Where the failure of a guardian to file an inventory and make reports required by law is the principal cause of the intricate and complex condition in which his accounts are involved, and the great labor required in attending to the matter is owing to his own neglect, his wards ought not to be required to pay an attorney's fee for services in stating the account.

5. DOWER—*right to rents—before assignment.* A surviving wife or husband is not entitled to rents and profits as damages for non-assignment of dower, which have accrued prior to his or her demand for dower and a refusal to assign the same. But the commencement of suit for dower is treated as a demand therefor.

6. SAME—*former decisions—obiter dictum.* The opinion of the court in *Lenfers* v. *Henke,* 73 Ill. 405, in so far as it states that at common law an infant heir may assign dower, is *obiter dictum.*

7. SAME—*guardian can not assign dower to himself.* Even if the general rule were that a guardian may assign dower for his wards, yet reasons of public policy and public morality would alike preclude the idea that, where one and the same person is both the owner of the dower and the guardian of the infant heirs, he may lawfully assign dower, as such guardian, to himself, as the holder of the dower right, or make an agreement, in his trust capacity, with himself, acting in

his own interest, to give to himself, in lieu of that which he is author-ized to demand,—an assignment of common right,—something else that he is not authorized to demand except under certain contingen-cies, which must be found to exist by a court of competent jurisdiction.

8. It would be absurd for a person to make a demand upon himself, and then refuse to comply with such demand; and it seems monstrous that one acting in his own behalf, as the owner of a right of dower, may make a demand upon himself, as the guardian and trustee of the infant heirs, etc., and by simply refusing or neglecting to comply with such demand, make such infant heirs, his own wards, liable to pay him damages.

9. APPEAL—*reviewing controverted questions of fact—guardian's ac-count.* The finding of the facts by the Appellate Court in respect to the settlement of a guardian's accounts is not conclusive on this court on appeal from that court, but this court may adjudicate in respect to controverted questions of fact.

WRIT OF ERROR to the Circuit Court of Madison county; the Hon. B. H. CANBY, Judge, presiding.

Messrs. KROME & HADLEY, and Messrs. DALE & BRADSHAW, for the plaintiff in error.

Messrs. HAPPY & TRAVOUS, and Messrs. E. C. & W. F. SPRINGER, for the defendants in error.

Mr. JUSTICE BAKER delivered the opinion of the Court:

The proceeding embodied in this record was commenced in the county court of Madison county, and is the final settlement of Andrew Rawson, late guardian of William T. Ground, Richie B. Ground and Brittania S. Ground, in respect to his care and management of their property and estate. Clarence C. Corbett, the now guardian of said William T. Ground and Richie B. Ground, minors, and the said Brittania S. Ground, who had arrived at full age, appeared and filed exceptions to the report made by and accounts presented by said Rawson. From the findings made and orders entered in the county court an appeal was taken to the circuit court of the same county. There was a hearing or trial *de novo* in this latter

court, and certain findings and final orders made and entered
of record, and thereupon Rawson sued out a writ of error from
the Appellate Court for the Fourth District, alleging that in
such findings and orders and record there was manifest error.
The Appellate Court in part affirmed and in part reversed the
findings of the circuit court, and remanded the cause for fur-
ther proceedings in conformity with the opinion of the Appel-
late Court then delivered. (See *Rawson* v. *Corbett et al.* 43 Ill.
App. 127.) Rawson, plaintiff in error, then sued out this writ
of error to the Appellate Court, and brought the record here.

There is a preliminary question to dispose of. It is sug-
gested by defendants in error that the orders and judgment of
the Appellate Court are final as to all questions of fact. Such
is not the law. County courts in this State (of course ex-
cluding counties in which probate courts have been estab-
lished under the act in force July 1, 1877,) have equitable
jurisdiction in the adjustment of the accounts of guardians,
and in such cases may adopt the forms of procedure in equity.
(*In re Steele et al.* 65 Ill. 322.) And in the late case of *Kings-
bury* v. *Powers,* 131 Ill. 182, this court held, by necessary
implication, that it had power to adjudicate in respect to
controverted questions of fact.

Nine errors here have been assigned by plaintiff in error
upon the record of the Appellate Court, and three of these it
will not be necessary to formally notice. No cross-errors have
been assigned thereon by defendants in error.

The first assignment of error is, that the Appellate Court
held that plaintiff in error was liable for $1470 interest on
what is called in the record the Siedler loan; and the second
assignment is, that said court erred in holding plaintiff in
error entitled to no credits on account of said loan. These
assignments, as we understand counsel, refer to the same
subject matter, and may be considered together.

The above mentioned sum of $1470 is made up by three
items of interest, supposed to have been paid on the Siedler

loan and mortgage,—*i. e.*, amount paid out of the Schmidt rent, $1013.20, amount paid through John G. Irwin, $106.80, and interest from February 12, 1885, to January 12, 1888, $350.

It is admitted by defendants in error, in their brief and argument filed in this court, that the Appellate Court erroneously charged plaintiff in error with "interest on Siedler mortgage paid out of Schmidt rent, $1013.20." The occasion for this admission is, that said court also charged plaintiff in error with the full amount of the Schmidt rent. Rawson, very clearly, should not be required to pay this $1013.20 twice.

The $106.80 was paid by Irwin, acting as attorney and agent of plaintiff in error, out of the Taylor fund, hereinafter mentioned, as interest on the Siedler note and mortgage. Said note was the note of plaintiff in error and his brother, Samuel Rawson, given by them for their own debt of $2000, but secured by a mortgage executed by Sylvania E. Rawson, wife of plaintiff in error, and mother, by a former husband, of the three wards of plaintiff in error, upon lands which were her own separate property. Irwin paid in settlement of said debt and mortgage $2106.80, the $2000 being the principal, and $106.80 the interest. This was all paid out of the Taylor fund, which belonged to the wards. At the trial *de novo* in the circuit court, plaintiff in error presented amended accounts, in which he charged himself with the whole of the principal of the Taylor fund, $6833, and if he is charged with interest upon the whole of the Taylor fund, as was done by the order and judgment of the Appellate Court, then, if he is also charged with the item in question of $106.80, he is forced to pay the same interest twice.

The charge of $350 interest must have arisen from a misapprehension of the record on the part of the court, for if Irwin, by paying the $2106.80, paid up in full the amount of both principal and interest due on the note and mortgage, then, manifestly, no interest could thereafter accrue thereon.

We think that the two assignments of error in question are well assigned, and that the three items of interest based on the Siedler transaction, and amounting in the aggregate of $1470, should be stricken from the debit side of the accounts of plaintiff in error.

The third assignment of error is, that the Appellate Court erred in holding plaintiff in error liable for interest upon the whole of the Taylor fund, and the fourth is, that it was error not to hold him liable only for interest upon annual balances; and these two assignments are also so connected with each other that they can be disposed of together.

That which is called the Taylor fund amounted in the aggregate, as already stated, to $6833. It was inherited by the three wards from the estate of their grandmother, and was received by plaintiff in error, their guardian, as follows: $4863.69 on February 11, 1882, and $1969.32 on March 12, 1883, both amounts being received in the form of checks drawn by the master in chancery. These checks were not collected by plaintiff in error until January 1, 1885, when they were cashed and the money handed over to Irwin to loan. Irwin loaned this money and collected interest to the amount of $1071.49, as found by the Appellate Court. We understand it to be conceded, and plainly it could not well be controverted, that plaintiff in error is liable for this item of interest. The total amount of interest on the Taylor fund charged by the Appellate Court to the debit side of the guardian's accounts was $2059.37. In making up this latter amount, the court charged the guardian with $987.88 of interest that he never received. This arose from the fact that through neglect of statutory duty on the part of the guardian, (Guardians and Wards act, sec. 22,) the sum of $4863.69 lay idle, not loaned or invested, and earning nothing, from February 11, 1882, until January 1, 1885, and the further sum of $1969.32, by like neglect of duty, was left in like condition from March 12, 1883, until January 1, 1885.

Plaintiff in error concedes that he, as guardian, should have been charged with interest on money in his hands which he failed to loan when he might have done so, but he insists that the Appellate Court, in charging him with $987.88 interest not collected, assumed that the whole of each of the aforesaid installments of the Taylor fund were the moneys of his wards from the times they were respectively received, and so remained, continuously, thenceforward, and until January 1, 1885. In other words, his contention is, that at the time the first installment was received the wards were indebted to him in considerable amounts, and that he thereafter, and until January 1, 1885, continued to make advances to pay for their maintenance and education, and to pay other sums of money that were charged against their estate, and that, therefore, annual rests should have been made in computing the amount he was liable to pay them for unearned interest. Defendants in error admit that the correct rule in stating a guardian's account is to arrange the items in chronological order, and make annual rests, etc. They insist, however, that the guardian having chosen to state his accounts in the manner shown by his report, and no objection having been made thereto by or on behalf of his wards, the Appellate Court adopted the proper course by adding to the accounts such items as he should have been charged with but were omitted by him.

We are inclined to concur in the suggestions made by defendants in error; and we may add, that in this case the guardian never complied with his statutory duty to return to the county court which appointed him, an inventory of the real and personal estate of his wards; (1 Starr & Curtis' Stat. chap. 64, secs. 12, 13;) that he wholly and persistently neglected, for a period of seven or eight years, and until the filing of his first report herein, to perform the further duty peremptorily enjoined by the statute, (sec. 14,) which requires that "the guardian shall, at the expiration of a year from his appointment, settle his accounts as guardian with the county

court, and at least once every three years;" (see, also, sec. 16;) that neither in his original report and accounts presented to the county court, nor in his amended reports and accounts presented in the circuit court at the time of the hearing and trial of this proceeding, did he make any claim or suggestion of annual rests, or that at any time during his administration of the estate of his wards such wards were indebted to him, and he, therefore, not chargeable with interest on the trust funds that came to his hands that had not been put and kept at interest, in conformity with the requirements of the statute. (Sec. 22.)

It would be an arduous and unreasonable burden, and one, perhaps, impossible of accomplishment, for an appellate tribunal to work its slow way through a voluminous record, containing, along with a large quantity of oral and other testimony, the accounts, both debits and credits, of the guardian with each of his three wards, and said accounts accompanied by seven lengthy exhibits, containing the items, in detail, of seven and a half years' administration of the estates of said three wards,—and this, for the purpose of ascertaining, by comparison, whether or not, at a number of particular dates, the affairs of the administration were in such condition as that interest should not be charged upon the whole of this trust fund called the Taylor fund. And more especially ought not such a task to be undertaken, when the guardian, in his report and accounts, has made no claim of that sort, and when the complicated condition of his accounts, and of the several trust funds committed to his care, is owing to his own negligence and his failure to make reports as required by law.

In our opinion the Appellate Court committed no error when it simply added to the accounts presented by the guardian such items of charge against him as were valid, but omitted from the report presented for approval.

It is urged that the Appellate Court erred in holding that plaintiff in error was not entitled to one-third of the rents of

the lands of which his wife died seized, as and for his dower therein. After Brittania S. Ground, one of the wards, became of age, and Corbett, the present guardian of the other two wards, had become such guardian, plaintiff in error conveyed the residue of his dower interest to his former wards in consideration of $800. His contention is, that he should have been allowed, in the settlement of his guardianship, one-third of the rents that accrued from the lands of his deceased wife, from the date of her death until the time of making the agreement to convey the residue of his dower to the heirs.

Section 18 of the Dower act makes it the duty of the heir or next freeholder to assign dower in lands of which any person is entitled to dower. Section 19 provides that if this is not done within one month after the death of the deceased husband or wife, the surviving wife or husband may sue for and recover dower by petition in chancery. Section 21 provides that infants may petition by guardian or next friend, and that when an infant is a defendant he may appear by guardian or guardian *ad litem.* Section 41 provides that whenever, in any action brought for the purpose, a surviving husband or wife recovers dower in any lands, he or she shall be entitled to recover reasonable damages from the time of his or her demand, and a refusal to assign reasonable dower. And section 43 makes provision for heirs, or, if under age, their guardians, or any other persons interested in the lands, filing a petition to have dower assigned to any person entitled thereto.

*Atkin* v. *Merrell,* 39 Ill. 62, was a bill in chancery, and it was there held that a widow was not entitled to rents and profits as damages for non-assignment of dower, which have accrued prior to her demand for dower and a refusal to assign the same; that from the time such a demand is made she is entitled to damages; that a third of the rents which may have accrued after the demand would form their proper measure,

and that the commencement of a suit for an assignment of dower may be regarded as a demand therefor.

*Bonner* v. *Peterson*, 44 Ill. 253, was also a bill in chancery, and there the same doctrine was held as that held in *Atkin* v. *Merrell, supra.* The court, in its opinion, said: "If the heir is of age, then the demand is on a person who can act, and failing to comply with the demand, he is in default, and the widow is entitled to damages from that date. * * * It has, however, been uniformly held that the commencement of a suit for dower is a legal demand for dower. It then follows, that when a suit is commenced against the minor heir to have her dower allotted to her, this is such a demand as the statute contemplates, and from that time the widow will be entitled to damages for withholding her dower. * * * It then follows, that the heir in this case is only liable to damages from the time when this suit was instituted. The measure of such damages is usually the net profits or income of one-third of the estate in which the widow has dower. * * * It then follows, that the heir in this case should be required to account for one-third of the net proceeds of the rents and profits derived from the real estate in which the widow is entitled to dower, received from the commencement of this suit in the court below. * * * This is the true measure of damages in this case for the delay in assigning the dower."

*Peyton* v. *Jeffries*, 50 Ill. 143, and *Strawn* v. *Strawn's Heirs*, id. 256, are to like effect with the two cases above mentioned; and *Toledo, Peoria and Warsaw Railway Co.* v. *Curtenius*, 65 Ill. 120, *Simpson* v. *Ham*, 78 id. 203, *Cox* v. *Garst*, 105 id. 342, *Lennahan* v. *O'Keefe*, 107 id. 620, and *Cool* v. *Jackman*, 13 Bradw. 560, and probably other cases, announce the same rule.

Among the authorities relied upon by plaintiff in error in support of his claim that he is entitled to one-third of the rents derived from the lands of which his wife died seized, during the time that elapsed between the date of her death and the date when he sold his dower right, are two cases de-

cided in this court,—*Clark* v. *Burnside,* 15 Ill. 62, and *Lenfers* v. *Henke,* 73 id. 405. We are unable to see in what way *Clark* v. *Burnside* assists his claim. It seems to us that it rather militates against it. The statute then in force, (Rev. Stat. 1845, chap. 34, sec. 31,) as well as the statute now in force, (1 Starr & Curtis' Ann. Stat. chap. 41, sec. 43,) gave to the guardian of heirs under age authority to petition to have dower assigned. The widow in *Clark* v. *Burnside* was in possession of the farm, not as dowress, but by virtue of her right of quarantine given her by the statute then in force, (Rev. Stat. 1845, chap. 34, sec. 27,) and it was held that not only the guardian of the infant heirs, but also his estate after his decease, was liable for the damages occasioned the wards by such guardian's non-performance of duty in failing to institute proceedings for the assignment of dower, and then leasing the portion of the farm set apart to his wards.

In *Lenfers* v. *Henke, supra,* it was held that where a widow was owner in fee of a one-third interest in mineral land and had a right of dower in the other two-thirds, and the heir was seized in fee of said two-thirds, and they made an agreement, before the mines were opened, that each should receive one-half of the rents and profits of the mines, such agreement might be regarded as an assignment of dower as to the two-thirds; and further held, that when an heir of lawful age makes an assignment of dower in mineral land, by giving the dowress a distinct portion of the rents, it will, if fairly made, bind the heir and all privies in estate, and also held that an assignment of dower may be made by parol. We have no fault to find with said several propositions as held by the court, and understand them to be correct statements of the law; but we find nothing in them that conflicts in the least with the rule laid down in the line of cases we have above cited. It is true that the justice who wrote the opinion of the court in the *Lenfers case,* not only decided that case, but added a remark to the effect that at common law an infant heir may assign

dower; but that question was not involved in the case that was being adjudicated, and was palpably *obiter dictum,* and possibly in conflict with some things either said or held in one or more of the cases cited by us. But whether or not the *dictum* is a correct statement of the common law, or even of the law that is in force in this State, is so wholly immaterial in the decision of the case now in hand that we do not deem it worth while to neglect other duties in order to consider of the matter, and so, for the purposes of this decision, and for that purpose only, we may assume the law to be that an infant heir, or his guardian, may, either of them, assign dower. But we will not consider that subject further until we have disposed of another matter.

Upon what we regard as the real issue here,—whether a surviving husband or wife who has a dower right, but whose dower has never been assigned, and no demand, or what is equivalent to a demand, has been made for its assignment, is entitled to receive a share of the accrued rents and profits,— some cases and other authorities have been cited as to the rule that obtains in other jurisdictions. It may be that a different rule has been announced elsewhere than that established in this State by a long line of adjudicated cases. If so, we may say that the rule that was followed by the Appellate Court in deciding this branch of the proceeding now at bar has been enunciated in so many cases, and for such a long period of time, that it has become a rule of property, and must be adhered to.

We will go back now to a matter upon which considerable stress seems to be placed by counsel. We assumed, for the purposes of this decision only, that an infant heir or his guardian may make a valid assignment of dower. How stands this case then? It is conceded, and must be, that dower has never been assigned by any proceedings in any court, that a proceeding of that kind has never been commenced in any court, and that there has been no assignment of dower by any

act or agreement of the infant heirs, they acting or agreeing personally or in their own behalf, or through any agent appointed by themselves. It is, or must be, also conceded that there has never been any demand, or anything equivalent to a demand, made by plaintiff in error, or any one in his behalf, for assignment of dower, upon the infant heirs, or either of them, or upon any one authorized to act for them, unless it be that such demand was made upon their guardian. This, then, leaves only two questions to be solved. Was there any actual assignment of dower, by act or agreement, of any one authorized to so act or agree for the infant heirs? And, was there any demand made upon their guardian to assign dower?

In respect to the first question, it is sufficiently answered by the testimony of plaintiff in error himself, and that of Irwin, his attorney and agent, given at the hearing of the cause. Plaintiff in error, testifying in respect to the status of affairs at the time he sold the residue of his dower right, swore that up to that time nothing had been done to have his dower assigned. And Irwin testified: "I knew all the time that if the dower was assigned, he (meaning plaintiff in error) was in danger of his partnership creditors." And besides this, there is no evidence whatever tending in the least degree to show that the infant heirs specially authorized any one to assign dower. And even if the general rule were that a guardian may assign dower for his wards, yet reasons of public policy and public morality alike preclude the idea that where one and the same person is both the owner of the dower right and the guardian of the infant heirs, he may lawfully assign dower, as such guardian, to himself, as the holder of the dower right, or make an agreement, in his trust capacity, with himself, acting in his own interest, to give to himself, in lieu of that which he is authorized to demand,—"an assignment of common right,"—something else that he is not authorized to demand except under certain contingencies, which must be

found to exist by a court of competent jurisdiction. Dower act, sec. 39.

The second question above suggested,—whether there was any demand made upon the guardian of these infant heirs to assign dower to said guardian,—is sufficiently answered by what we have said in regard to the first question. It seems to us that it would be absurd for a person to make a demand upon himself, and then refuse to comply with such demand. And it seems to us monstrous that one acting in his own be-half, as the owner of a right of dower, may make a demand upon himself, as the guardian and trustee of infant heirs, and by simply refusing or neglecting to comply with such demand, make such infant heirs, his own wards, liable to pay him damages.

The last assignment of error upon the Appellate Court record is to the effect that said court erred in disallowing the $300 attorney's fees, asked by plaintiff in error. This alle-gation of error is sufficiently answered by quoting from the opinion filed in the Appellate Court what is there said in re-gard to this item, and adopting that as expressive of our own views. The language of that opinion is, substantially, as fol-lows : "The guardian asks credit for the sum of $300 as an attorney's fee paid John G. Irwin in and about the duties of the guardian and the making of this report. The guardian's own failure to file an inventory and make the reports required by law was the principal cause of the intricate and complex condition in which the accounts are, and the great labor re-quired in attending to the matter is owing to his own neglect, and the wards ought not be compelled to pay for that service."

It follows from that which we have said, that we find no substantial error in the orders and judgment of the Appellate Court, other than in charging plaintiff in error with the three items regarding interest upon what is called the Siedler loan. Said items are, respectively, $106.80, $1013.20 and $350,

making an aggregate of $1470. In respect to these three items the orders and judgment are reversed.

Said court, in stating the account between plaintiff in error and his ward Brittania S. Ground, found that there was due her $969.40. From this $969.40 should be deducted one-third of the over-charge of $1470, and this makes the true and correct amount due said ward to be $479.40. Making a like deduction from the $2114.62 found to be due his ward Richie B. Ground, leaves the true and correct amount due said ward to be $1624.62. And making a like deduction from the $1997.40 found to be due his ward William T. Ground, leaves the true and correct amount due said ward to be $1507.40.

The findings, orders and judgment of the Appellate Court are in part affirmed and in part reversed. The cause is remanded to the circuit court of Madison county for further proceedings in conformity with the opinion of the Appellate Court, so far as that opinion is not in conflict with the views herein expressed, and also in conformity with this opinion. Inasmuch as the writ of error herein to the Appellate Court has resulted in reducing the amount found due from plaintiff in error to his wards to the extent of $1470, it is ordered that the costs of this court be paid by the defendants in error herein.

*Judgment affirmed in part and in part reversed.*

Mr. JUSTICE PHILLIPS, having heard this case in the Appellate Court, took no part in this decision.