Rawson v. Corbett.

## ANDREW RAWSON

v.

## CLARENCE C. CORBETT, GUARDIAN, ET AL.

| 43 | 127 |
| 150s | 468 |
| 43 | 127 |
| 59 | 125 |

*Guardian and Ward—Final Account—Exceptions to—Dower—Assignment of—Practice.*

1. As a matter of practice each item in an administrator's account rendered, is a separate claim depending alone upon its own merits, and as to each item judgments are separate, and the same principle would apply to a guardian's report.

2. Where, in a given controversy, certain exceptions to a guardian's account are overruled and the ward appeals, and an order sustaining other exceptions is excepted to by the guardian, who sues out a writ of error and brings the record to this court, assigning error therein, and the ward assigns cross-error, both proceedings may properly be incorporated in one record.

3. The failure of a guardian to attempt to loan the funds of his ward within a reasonable time from the receipt thereof, is a neglect of duty to such an extent as to make him liable for interest. In the case presented, sixty days are held to be such time.

4. A ward should not be called upon to pay attorney's fees, made necessary by the negligence of the guardian.

5. When a step-father takes his step-child into his family as a member, and services are rendered by the child and accepted, there is no liability on the part of the child for board. But in the settlement of estates and the accounting of guardians, the rule also is, that equitable rules will be applied. Therefore, it is held in the case presented, the step-father having kept his step-children in his family after their mother's decease, she having requested it, they having an estate and he being financially embarrassed, that he was entitled to compensation for their board.

6. This court holds that defendant should not be credited with one-third of the income of certain farm lands, he claiming the same by virtue of his rights of dower in the real estate of his deceased wife, the fee thereof being in his wards; as to them damages for the non-assignment of dower could only be had from the date of filing a petition for such assignment.

7. The guardian, in this case, as surviving husband, not being entitled to any portion of such income because of no demand for assignment of dower, it follows, as a necessary consequence, that he would not be liable for any part of the expenditures in keeping up the affairs of the farm improvements and the taxes thereon.

8. The fact that one member of a firm is in danger of a criminal prosecution will not justify all of its members giving a chattel mortgage upon firm property to secure his individual debt, the result being to render worthless a firm indebtedness to wards of another member thereof.

[Opinion filed February 26, 1892.]

IN ERROR to the Circuit Court of Madison County; the Hon. B. H. CANBY, Judge, presiding.

Messrs. KROME & HADLEY and DALE & BRADSHAW, for plaintiff in error.

An order to sell real estate of a decedent will not be made unless it is shown that there are existing debts against the

Rawson v. Corbett.

estate.   Until the holder establishes his demand against the
estate the sale of land will not be authorized.   Dorman v.
Tost, 13 Ill. 128.

Guardians are liable only for what they can realize from the
estate of their wards by a faithful discharge of duty.   Bond
v. Lockwood, 33 Ill. 212.

The amount found due in this proceeding will fix measure
of damages in suit on bond.   Morley v. Metamora, 78 Ill. 394;
Roper v. Sangamon Lodge, 91 Ill. 578; Cowley v. The Peo-
ple, 95 Ill. 249; Fogarty v. Ream, 100 Ill. 378;  Stovall v.
Bank, 10 Wall. 583.

Choses in action go to the administrator.   Leamon v. Mc-
Cubbin, 82 Ill. 263.

We insist that the court committed no·error in allowing
Rawson credit for the Seidler note, less the amount that could
have been obtained by filing it against the estate of Rawson
Bros.

It was contended in the court below that Rawson never made
a demand for his dower, and therefore should not receive
credit for one-third of the rents collected by him, and  Strawn
v. Strawn, 50 Ill. 256, and  Bonner v. Peterson, 44 Ill. 253,
were cited as supporting this view of the case.

The law is that a demand for dower may be made in writ-
ing, or by parol, and in either case is equally effective.   A
demand may be proved by parol, as an act *in pais*, by admis-
sions, or by positive and direct testimony, or may be inferred
from facts and circumstances.   5 Am. & Eng. Enc. of Law,
"Demand."

The rulings of our Supreme Court are in harmony with the
doctrine just stated, it being held that as dower is not created,
but only ascertained by assignment, it may be assigned by
parol.   Lenfers v. Henke, 73 Ill. 411.

In the Strawn case, while Bonner v. Peterson is quoted on
this question of demand, it is also said that where the heirs
are minors, "their guardian can at all times have dower
assigned."   P. 259.

In Clark v. Burnside, 15 Ill. 62, a guardian, on final settle-
ment, was charged with two-thirds of the rents and profits of

real estate of his wards, rightfully occupied by the widow because of non-assignment of her dower, on the ground that it was his duty to have the dower assigned.

In Lenfers v. Henke, 73 Ill. 411, it is said, "the infant heir may assign dower," but the law in such cases, protects against excessive or fraudulent assignments.

Secs. 21 and 43 of the Dower Act expressly provide that infants may petition for assignment of dower, by guardian or next friend.

None of the cases above mentioned involved the question of the right of the owner of the dower interest, when also guardian of the heirs, and thus representing all interests, to retain his or her portion on settlement with the heirs. In the Strawn case there were several large farms, and partition had been made, and dower had been assigned in all the lands of the decedent, and the question passed upon arose on bill for an account of rents and profits, brought after the division had been made. In other words, that was a case where the property was susceptible of division, and had been divided, and where there was no trust relation between the widow and the heirs, and none of the obligations and duties growing out of that relationship were considered. In this case there was but one farm, not divisible, or at least there is no proof that it could have been divided, without "great injury thereto" or "without prejudice to the parties interested." In such cases by the express terms of the 39th section of the Dower Act, "the dower may be assigned of the rents, issues and profits thereof, to be had and received by the person entitled thereto, as tenant in common with the owners of the estate." In Lenfers v. Henke, already cited, it was held that where there was an agreement between the widow and heir by virtue of which each received a definite part of the rents of a mine, that this was in effect an assignment of dower out of the rents and profits. By our statute, farming land not susceptible of division without prejudice to the parties interested, is upon precisely the same footing as mining property, a tavern, or any property not in its nature divisible was at the common law. The assumption involved in the position of the other side is,

Rawson v. Corbett.

that there can be no assignment of dower, except by metes and bounds, a position not borne out by the law. Is the court going to adopt a rule that will in all cases compel guardians having dower interests in lands of their wards to bring suit for assignment by metes and bounds, regardless of whether it will be to the advantage of the ward to do so or not? According to Lenfers v. Henke, if in this case Rawson and the Ground heirs had sustained no trust relations, and they had been of age, and it had been agreed that he should receive one-third, and they the remaining two-thirds of the rents, this would have been an actual assignment of dower. But they were minors, and he, as guardian, was under obligation to collect their rents, to lease their land, pay taxes and repairs, and account to them for the proceeds, and at the same time had a right to his own part. He did all this. What nonsense it is under these circumstances to say that he has no interest in the rents because he failed to perform a useless ceremony. Here the dower has been set apart and measured in a way to give the guardian his portion and the heirs theirs, both measured by an exactly correct rule, without wrong or injury to any one. Neither Bonner v. Peterson nor Strawn v. Strawn were intended to be applied to produce the consequences and absurdities opposite counsel seek to deduce from them, and to apply to this case.

An actual formal demand has not been held necessary in this class of cases. Such is the language of Strawn v. Strawn. In that very case no demand was made, and the widow had not sued for assignment of her dower, and yet it was held the circumstances proved were equivalent to a demand, and the widow was allowed to retain her third. Neither in the case last cited nor in Bonner v. Peterson is it held that the only way in which a demand can be made upon a minor is by suit, but it is held in both those cases, that the bringing of a suit is a demand. That is a proposition we do not question. The rules of law and the circumstances of those cases were simply applied so as to sustain the claim of dower in those cases, and what is said there by way of argument to sustain the conclusions there reached, should not be construed as to

defeat dower in a case like the one at bar. Such a use of the doctrine of those cases was not contemplated or intended by the court.

We may add that it has always been the practice in our County Court, and in the other County Courts of the State, so far as our experience goes, to allow rent to the owner of the dower interest in cases like the one under consideration. In Sabin v. Tunnell heirs, tried in our County Court, which was contested, the third was allowed to the estate of the widow, as can be seen from the files of that estate. No appeal was taken from the decision. That the law was so understood on first trial of this case, and that the raising of this question is an afterthought, is obvious from the fact that the exceptions filed in the County Court, though sweeping as to everything else, do not question Rawson's right to a third of the rents. The failure to raise this question precludes its consideration here and now, on the authority of Curts v. Brooks, 71 Ill. 125; Millard v. Harris, 119 Ill. 185. This is especially true as to Brittania S. Ground, who is of age.

But the object and purpose of Sec. 41 of the Dower Act is misconceived by opposite counsel, so it seems to us. At the common law, in proceedings to assign dower, the defendant could not recover damages for its detention. The remedy for damages was in equity. The statute of Merton, 20 Hen. III, Ch. 1, gave her damages for its detention, and the right to recover such damages whenever compelled to resort to her writ of dower. Am. & Eng. Enc. of Law, Tit. "Dower."

The 41st section of our Dower Act is simply the adoption of the statute of Merton. But independently of the statute of Merton, courts of equity, ever since they have exercised jurisdiction in dower cases, have uniformly given an account for arrears of rents and profits. This question is ably and exhaustively considered in Keith v. Trapier, 1 Bailey Eq. Rep. p. 68, from which we quote:

"Courts of equity give an account of rents and profits in dower, when no damages could be recovered at law under the statute. In the case of Dorner v. Fortescue, 3 Atk. 130, Lord Hardwicke observes that the court will give the doweress

Rawson v. Corbett.

profits from the time, not of her demanding it, which is the time from which she is to have it in her writ of dower, but will give it to her from the time her title accrued; and this although the statute gives her damages only from the time of her demand.   Lord Coke says (Hardwicke quoting Coke) if the wife have not requested her dower, she shall lose (at law) the mean value, and her damages, but the course of this court (equity) has been to assign dower and universally to give an account from the death of her husband."

Curtis v. Curtis, 2 Bro. C. C. 632, Banks v. Sutton, 2 P. Wms. 719, and Oliver v. Richardson, 9 Ves. 222, are all to the same effect, and are cited and reviewed in Keith v. Trapier, in which the following language is also used:

" The decreeing an account for arrears in dower seems to rest on the same ground precisely as the decreeing an account for rents and profits of real estate.   The practice of the court to give an account of rents and profits does not depend on any statute, but on general principles of equity.   Lord Hardwicke puts them both on the same footing in Dorner v. Fortescue."

Our statute being just the same in effect as the statute of Merton, it can not be doubted that our Supreme Court will follow Lord Hardwicke and Chancellor Kent and the Maryland Supreme Court in their construction of it, when a case calling for the application of the doctrines of equity comes before it.   The following cases follow the doctrine of Keith v. Trapier, viz.: Slatter v. Meek, 35 Ala. 528; Darnall v. Hill, 12 Gill & J. 388; Johnson v. Thomas, 2 Paige Ch. 383; Hazen v. Thurber, 4 Johns. Ch. 603; Herbert v. Wren, 7 Cranch, 370.

Messrs. HAPPY & TRAVOUS and E. C. & W. F. SPRINGER, for defendants in error.

It has been held that a step-father, who is also guardian, is not entitled to compensation for maintaining the wards who are his step-children.   Douglas' Appeal, 82 Penn. St. 169.

It has also been held that where a man marries a widow with children, if he assume the relation of father to the children, and as such provides them with board and clothing, and in return has their labor, he can not recover for their support

thus furnished. Meyer v. Temme, 72 Ill. 574; Brush v. Blanchard, 18 Ill. 46; Davis v. Harkness, 1 Gilm. 173.

We contended on the trial in the court below, and the court so held, that Andrew Rawson was not entitled to any part of the rents of the lands owned by the mother of his wards, having made no demand for the assignment of his dower; that until such demand the heirs could not be put in default so as to entitle Rawson to one-third of the rents by way of damages.

Supporting this position, see Sec. 41, Chap. 41, Ill. Stats.; Atkin v. Merrell, 39 Ill. 62; Bonner v. Peterson, 44 Ill. 253; Peyton v. Jeffries, 50 Ill. 143; Strawn v. Strawn, 50 Ill. 256; T. P. & W. Ry. Co. v. Curtenius, 65 Ill. 120; Simpson v. Ham, 78 Ill. 203; Cox v. Garst, 105 Ill. 342; Lennehan v. O'Keefe, 107 Ill. 620; Cool v. Jackman, 13 Ill. App. 560.

These decisions were rendered in accordance with the statutes above referred to, which Rawson's attorneys say is like, and in fact, a substantial re-enactment of the statute of Merton.

The last named statute, according to Washburn on Real Property, gave the widow the right in an action against the heir for assignment of her dower, where she obtained judgment for her dower, to recover her damages for the heir's failure to assign, and in that statute these damages were expressly declared to be "the value of the whole dower from the time of the death of the husband unto the day that the said widow by judgment of our court have recovered seizin of her dower," etc. 1 Washburn on Real Property, 231.

The only similarity between that statute and ours is that in both, damages are allowed for failure to assign dower.

The English statute limited the persons against whom the damages could be recovered to the heir, but fixed the measure of damages to the full value of the whole dower from the husband's death; while our statute limits the damages to no class, but fixes the measure thereof from the time of demand and refusal to assign dower.

Notwithstanding this statute of ours and the numerous discussions thereon, if we correctly interpret the argument of opposing counsel, they claim:

Rawson v. Corbett.

First, that in this case no demand and refusal was necessary.

Second, that if a demand and refusal were necessary, they made a sufficient demand and got a sufficient refusal.

Third, that dower was, as a matter of fact, somehow assigned, either by the infant heirs or by their guardian for them.

Fourth, that without any demand or refusal, and without any assignment of dower, the Probate Court has the right to give Rawson one-third of the rents accrued on the wards' lands on final settlement of the guardian's accounts after his guardianship has ended.

In the case of Bonner v. Peterson, above cited, the court decide that before a minor heir could be put in default so as to entitle the doweress to one-third of the rents, there must be a legal demand upon him, and inasmuch as neither the guardian nor the minor heir could make a legal assignment of dower, the demand necessary in such case would be the commencement of a suit in court for assignment of dower. The court further hold in that case that the suit commenced must result in the establishment of the right to dower; that the beginning of a suit which results in being dismissed is not such a demand as the law contemplates. We can see nothing in the relationship of the parties in this case which exempts the step-father from the effect of that statute.

It has been repeatedly held to apply as between mother and children. The fact that Rawson's interest as surviving husband might conflict with the rights and interest of his minor wards made it more necessary that a court should pass on the matter and say whether the premises were susceptible of division without prejudice, and if so, what part of the land should be set off for dower. It was certainly never contemplated by the legislature that a guardian of minor children should have the right to make a bargain with himself in his capacity of dower claimant.

Equity would not permit one holding the fiduciary relation Rawson did to act in behalf of his wards in a matter where his own interests might conflict with theirs. According to the Bonner v. Peterson case a guardian having no conflicting inter-

est in the matter and having some one to negotiate with beside his other *ego* can not make a valid assignment of dower.

We are referred to the case of Lenfers v. Henke, 73 Ill. 411, in support of the doctrine that an infant heir may assign dower.

That case is not an authority to that extent as applied to this State. It is said by the court that " at common law the infant heir may assign dower for the reason the widow's claim is urgent and necessary for her immediate support." But the question of minority does not seem to have been involved in that case. The court sustained the assignment of dower for the reason that " if of lawful age the assignment once fairly made would bind the heir," etc. That case sustained the Bonner case to the effect that in this State neither guardian nor infant heir can assign dower.

PHILLIPS, J. Plaintiff in error married the widow of R. B. Ground, deceased, who had, by her former husband, three children—Brittie, William and Richie Ground, and after the death of his wife, which occurred August 25, 1879, the plaintiff in error became guardian of her children and entered into bond August 19, 1881. The plaintiff in error was married to Mrs. Ground on October 3, 1877, and on the 8th of February, 1878, she mortgaged eighty acres of her real estate to secure the payment of a note for $2,000 for money borrowed by Rawson Bros., a firm composed of her husband and his brother, but was not a party to the note. This note was made payable three years after date, and bore interest at the rate of eight per cent per annum, and is the note and mortgage known in the evidence as the Seidler mortgage. On September 28, 1878, Mrs. Rawson purchased what is known as the Carney property in Troy for the consideration of $2,500, and as part of that consideration assumed the payment of a mortgage previously given by Carney on the property, and which at the time of her purchase amounted to $2,000. The consideration in the deed was $4,000, but the real purchase price was $2,500. A deed to the property was executed and delivered to her, but by reason of a mistake in the description another deed was

made after her death by which that property was conveyed by a correct description to Rawson on February 16, 1881. Mrs. Rawson, at the time of her death, besides the Carney lot, which she occupied as a homestead, owned two hundred and seventy-one acres of real estate which was productive. All her indebtedness was paid but $216 advanced by her husband, and the $2,000 on the homestead secured by mortgage, and the note of Rawson Bros. for $2,000, which was secured by a mortgage on her real estate.

The firm of Rawson Bros. failed and made an assignment for the benefit of creditors on January 1, 1885; just before the assignment that firm executed a chattel mortgage on the firm property to secure an individual debt of Samuel Rawson to the amount of $2,000 and the firm property assigned only paid a dividend of thirteen cents on the dollar; the note secured by Mrs. Rawson had been due over three years at that time. The day before the assignment, Rawson conveyed his interest in the homestead to his wards. From the time of his appointment as guardian to the time of his final report on April 5, 1888, he filed no inventory and made no report as guardian. On the filing of that final report exceptions were filed to the same and heard by the Probate Court and certain exceptions sustained and certain others overruled. Corbett, the successor as guardian to two of the wards who are yet minors, and Brittie, who is now of age, appealed from that part of the order overruling exceptions, and Rawson appealed from that part of the order sustaining exceptions. In the County Court seventeen exceptions were filed which may be abstracted as, first, that he had not charged himself with all the assets which came to his hands as guardian; second, that he had not charged himself with money received for lumber and ties sold from wards' lands; third, that he had not charged himself with interest received on money of his wards and had failed to invest $6,000 of his wards' money for three or four years; fourth, that he failed to account for all money realized on notes secured by mortgage on real estate in Macoupin County; fifth, that he failed to charge himself with one-third of cost of monument for Mrs. Rawson which was paid for out

of his wards' money, and he had promised to pay one-third of cost; sixth, that he failed to charge himself with $4,000 loaned on January 1, 1885; seventh, that he failed to charge himself with $2,000 received about 1884, but paid out the same on his own indebtedness for which the estate of his wards were sureties; eighth, that he failed to manage the estate frugally and did not file inventories, nor make annual reports for a period of over eight years, and during that time occupied the real estate of the wards, the homestead, and charged himself with no rent; ninth, excepts to allowance of commissions; tenth, excepts to items for which credit is asked for board of ward; eleventh, excepts to item for which credit is asked in exhibit "A," expenditures on account of farm lands; twelfth, excepts to items for which credit is asked in exhibit "B" for clothing, money, etc.; thirteenth, excepts to item for which credit is asked in exhibit "C" for clothing, etc.; fourteenth, excepts to the credit asked for the payment of the notes and mortgage on the homestead; fifteenth, excepts to item for which credit is asked for an attorney's fee paid by guardian in and about the making of reports, etc.; sixteenth, is general; seventeenth, is general.

When the cause came for trial in the Circuit Court there was an amendment to the report by the guardian asking credit for the payment of the Seidler mortgage and thereupon by leave of court additional exceptions were filed which are substantially: Eighteenth, except to credit asked for the payment of the Seidler mortgage; nineteenth, that the guardian has failed to charge himself with rents received other than the homestead and failed to charge himself with interest. The accounts with each of the three wards are incorporated in this record, and in discussing the facts of the case we will do so without applying them to each account separately except when it is necessary so to do.

The Circuit Court sustained exceptions numbered one, two, three, five, six, eight, fifteen and nineteen, and overruled exceptions numbered four, seven, nine, ten, eleven, twelve, thirteen, fourteen and eighteen, and charged the guardian in favor of Brittania with $517.06, William T. $812.48, and Richie $1,944.25.

The order overruling the exceptions was excepted to by defendants in error, who filed their appeal bond on June 4, 1889, and the order sustaining exceptions was excepted to by plaintiff in error, who sues out this writ of error, and brings the record to this court and assigns error therein, and the defendants in error assign cross-error. But one record is before the court.

As a matter of practice, each item in an administrator's account rendered, is a separate claim depending on its own merits, and as to each item the judgments are separate. Morgan v. Morgan, 83 Ill. 196. The same principle would apply to a guardian's report.

It was held in Harris v. Millard, 17 Ill. App. 512, that an appellee would have no right to assign cross-errors except on the subject-matter properly before the court for review, and holding that on trials of appeals from the Circuit Court to this court the same principle applies as in appeals from the County to the Circuit Court. In that case, where the executor appealed from an order sustaining an exception, the right to assign cross-error in overruling an exception was denied to appellee.

In Harding v. Larkin, 41 Ill. 413, it was held that one party may prosecute a writ of error, and the other appeal from the same judgment, and both progress at the same time. We see no reason why both proceedings may not be incorporated in one record, and hold they may. The report of the guardian as originally filed showed in his hands belonging to William $504.43 and to Richie $681.64, and that Brittania was indebted to the guardian in the sum of $458.58. He subsequently amended the report so as to charge himself with the sum of $13.33 for each of his wards, as money received from the sale of lumber from the land of wards. After the appeal was taken to the Circuit Court the guardian, at the instance and request of his securities, asked, for a further credit from each ward, the sum of $693.45, being for money paid on the Seidler mortgage, and to which the eighteenth exception applies.

The evidence shows that on February 11, 1882, the guard-

ian received a check from the master in chancery of Madison
County for the sum of $4,863.69, and on March 12, 1883, he
received a check from the same officer for $1,969.32; these two
sums belonged to his wards, being inherited from the estate of
their grandmother, and are spoken of in the testimony as the
Taylor fund. Neither check was collected by the guardian until
the 1st of January, 1885, when he placed the two checks in
the hands of his attorney, John G. Irwin, to loan the same. He
loaned this money, or the greater part thereof, and collected
interest to the amount of $1,071.49. The father of the wards,
at the time of his death, held certain notes secured by mort-
gage on land in Macoupin County, which notes were converted
into money, and on April 30, 1880, the guardian received from
that source $1,116.39. J. G. Irwin had collected certain
moneys from the investment in Macoupin County, and on
December 20, 1879, paid the guardian $205.59. The wards
had an interest in real estate in Edwardsville, which was sold,
and from that source the guardian received on the 4th of Jan-
uary, 1882, the sum of $2,250. At the time of the death of
Mrs. Rawson she held certain notes which the evidence shows
were for the rent of land to thereafter accrue, the rents
accruing and becoming due after her death, and by the
descent of the land to the children the rents accrued to them.
Rawson was administrator of his deceased wife, and as such
administrator claimed to be entitled to one-third of those notes,
and to his report as such administrator exceptions were filed,
and on the adjudication on those exceptions, the notes were
adjudged to be the exclusive property of his wards, and from
that adjudication he has prosecuted no appeal, and by that
adjudication it was adjudged he had possession of the notes
as guardian.

The amount of those notes was $1,760; rents were collected
by the guardian in 1879, $403.08; in 1880, $233.49; in 1881,
$714.78; in 1882, $1,054.44; in 1883, $1,058.24; in 1884,
$488.19; in 1885, $1,158.45; in 1886, $707.69; in 1887, $36.66.
The evidence also shows that he collected in October, 1885,
of Smith, a tenant on the land, the sum of $116, for which
he executed a receipt and which item is not included in any of

Rawson v. Corbett.

the items testified to by him as being shown by his books; the rent thus collected, from this evidence it may be fairly assumed, is inclusive of the amount of the .notes. It is also shown the proceeds of lumber sold were received to the amount of $40. The fact is shown that the guardian received on February 11, 1882, the sum of $4,863.69, and on the 12th day of March, 1883, the sum of $1,969.32, which was not invested or loaned but permitted to remain in bank until January 1, 1885. There is no evidence in the record showing any effort on the part of the guardian to loan this money, or tending to show that a loan thereof could not have been effected. The failure to attempt to loan it is a neglect of duty on the part of the guardian to such an extent as to make him liable for interest, and as sixty days from the time of its receipt would be a reasonable time to effect a loan of the same, he should be charged interest on each of those sums from sixty days after their receipt until the 1st of January, 1885, when he placed the same in the hands of Irwin; and for interest on these sums he should be charged at the rate of six per cent per annum, and should have been charged in his report with. $987.98 on that account. It appears from the testimony of the guardian that the Seidler note and mortgage were transferable to Smith, a tenant on the wards' lands, and as testified by the guardian the interest on that mortgage was deducted from the rent owing by Smith, and kept out of the rent until that mortgage was paid off by Irwin out of the funds of the wards in his hands. The amount paid by Irwin on that mortgage was $2,106.80, and was paid some time .after January term, 1885, of the Madison Circuit Court.

Those notes bore interest at eight per cent and the amount of the principal was $2,000. All the interest but $106.80, was deducted out of rents for a period of seven years; and rents to the amount of $1,013.20, were never collected, but applied on that interest. The total amount of interest so paid on that note was $1,120, and he should also account for interest on that $2,000 from the 12th of February, 1885, to the time of the presentation of his report in January, 1888, at the rate of six per cent per annum, which would amount to the

sum of $350. The guardian was in possession of firm property which he used to secure the debt of an individual member of the firm, and at that time the firm had procured money on the security of land that belonged to these wards, and finally when the insolvent estate of that firm paid thirteen cents on the dollar it does not appear that any charge is made to the guardian for that sum. He is claiming as allowance for board of these wards to the amount of $2,820, and for commissions, the sum of $789. These amounts are embraced in certain exceptions we will hereafter allude to. It appears the homestead was purchased on credit by Mrs. Rawson and the same was subject to an incumbrance which the guardian claims amounted to $2,000; he renewed the loan at a cost of about $40, and paid interest over $160, and the cash payment of $500 made by him, and he asked to be credited with the sum of $2,702.45 on his account so incurred in paying for that homestead. There is no evidence in this record that places its value to exceed the sum of $2,500; as surviving husband he claims a dower and homestead interest therein, and by some arrangement made with the attorney representing the present guardian and the ward who has since become of age, he is to receive for that interest the sum of $800. No exception brings that item before us. If, however, the wards paid the full purchase price we do not see on what his dower or homestead interest could find a basis. These large sums of money claimed by him are sufficient to enable him to pay off a mortgage that was given to secure a debt of a firm of which he was a member. He could have had the partnership assets marshaled and had precedence of this indebtedness over an individual debt of another member of the firm. The fact that the chattel mortgage was given to secure that individual debt because of a fear that a criminal prosecution might be instituted against the other member of the firm, can not be heard as an excuse for not discharging a trust of this character.

We hold that the guardian is liable for the amount of principal and interest paid on the Seidler mortgage. From the death of his wife until 1887 the guardian occupied the home-

stead; he married a second time in 1881.   From the death of his wife until in 1887, while he so occupied that homestead, the wards made their home with him; it is from the evidence apparent that he treated them with the utmost kindness and extreme liberality.   The mother of these children had requested that he should keep them together as one family. In doing so, it was necessary to occupy the house, and while so occupying it he should not be required to pay rent.   It also appears that, while claiming in his evidence for taxes and repairs on the house, it is not embraced as a charge in his account.   Had he credit for taxes, repairs and labor in and about the homestead, he might well be required to pay rent, but his account contains no credit of that character.   It further appears that a tombstone was erected at the grave of the mother of his wards, and he promised to pay one-third of the cost of the same.   He had been the administrator of her estate and had paid out for that tombstone $250 and advanced money, as administrator, in excess of what he received, to the amount of $216.21, which he asks to be credited for in his account with the wards.   No exception is taken to the same further than to ask that his promise be complied with to the extent of paying the amount promised on the tombstone.   In sustaining the exception to the report which presented that question, there was not error, and there should be deducted from the balance due the administrator the sum of $83.33, one-third the cost of the tombstone.   We believe these items as discussed are all that go to make up the amounts which would properly be charged to the guardian, and the first, second, third and fifth were properly sustained, and so much of the eighth which charges neglect in the management of the estate, was properly sustained.   The seventh and eighteenth are substantially the same, having reference to the Seidler mortgage, and it was error to overrule exceptions thereto.

The fourteenth exception was as to the note on the homestead, and was erroneously sustained.   The guardian asks credit for the sum of $300 as an attorney's fee, paid John G. Irwin in and about the duties of the guardian and the making this report.   His failure to file an inventory and make annual

reports was the principal cause of the intricate and complex character in which the accounts are, and to his neglect the great labor required in attending to the matter is owing, and the wards ought not to be compelled to pay for that service. The fifteenth exception was properly sustained. It does not appear from the evidence in this record that the guardian failed to report the amount of money realized from the investment in Macoupin County, and in overruling the fourth exception there was not error. The rule is well established that when a step-father takes the step-child into his family as a member, and services are rendered by the child and accepted, there is no liability on the part of the child for board. In the settlement of estates, and the accounting of guardians, the rule is also established that equitable rules will be applied; the facts of this case are such that we have no hesitancy in holding that equitably this guardian is entitled to pay for the board of these children; he complied with the request of their mother and kept them together as one family, and during a portion of the time he was financially embarrassed, and they with an estate, that it would be manifestly unjust to require him to bear the burden of their care and support, and the amount charged is shown to be reasonable; and it was not error to overrule the tenth exception. The twelfth and thirteenth exceptions are to items furnished for clothing, money, etc., during a portion of the time the children were at school, and taking into consideration their education and position in society, the amounts furnished, while exceedingly liberal, are not improper, and these exceptions were properly overruled. Objection is made to the allowance of commissions. The evidence shows service in and about the renting of land, and the collection of rents, and that certain duties were performed; that compensation should be made, and to the extent that commissions are asked, we hold that there was not error in overruling the ninth exception.

The eleventh exception is an objection to the item in exhibit "A," showing the expenditure in and about the farm, and taxes; there is no evidence to show that any charge therein

is improper; the evidence of the guardian is, the expenditures were made as charged and were reasonable and proper; and it was not error to overrule the eleventh exception.   From the amount of rents collected from the farm and reported by the guardian he asked to be credited with one-third thereof as belonging to him by virtue of his right of dower in the real estate of his deceased wife.   The fee of the lands was in the wards, and as to them damages for non-assignment of dower can only be had from the date of filing a petition for assignment of dower.   Bonner v. Peterson, 44 Ill. 253.

Until a demand is made Rawson would be entitled to no part of the rents, and occupying the position of guardian, no demand could be made on any one that could assign dower, as he could not act for himself in demanding dower of himself in the fiduciary relation that exists here.   He is not entitled to one-third the rents of the farm lands.   Sec. 41, Chap. 41, Ill. Stats.; Atkins v. Merrell, 39 Ill. 62; Peyton v. Jeffries, 50 Ill. 143; Strawn v. Strawn, 50 Ill. 256; T. P. & W. Ry. Co. v. Curtenius, 65 Ill. 120; Simpson v. Ham, 78 Ill. 203; Cox v. Garst, 105 Ill. 342; Lennehan v. O'Keefe, 107 Ill. 620; Cool v. Jackman, 13 Ill. App. 560.   The credit asked by the guardian of one-third the rents could not be allowed.   It is urged, however, that that exception could not be considered as it was not filed in the County Court.   No objection appears in the record to have been made at that time, and in the assignment of errors in this court as made by plaintiff in error that question is not presented; we must consider the question as it appears in the record.

The guardian, as surviving husband, not being entitled to any part of the rents of the farm lands because of no demand for assignment of dower, it would follow as a necessary consequence that he would not be liable for any part of the expenditure in keeping up the affairs of the farm improvements and the taxes thereon, and we are disposed to include as within the nineteenth exception the credit claimed for one-third the rents and the assumption of one-third the expense included in exhibit " A," in and about the repair of the farm, and the taxes thereon, and that the taxes of 1879, as shown in the reports,

are all to be treated as one transaction, on which the statement of the account is attempted to be made, and hold that while not being entitled to credit for rents as a dower interest, he is not liable for taxes and expenses incurred on the farm, and that all three of these items are embraced in the nineteenth exception and it was not error to sustain the same. The tenth and seventeenth exceptions are general in their character and are covered by what is said of the other exceptions. The account as thus stated would show that the guardian has received and is liable to account for the sum of $17,657.98, and had in his hands for each of his wards the sum of $5,885.99; and that he should be charged on William's account with $5,885.99, and should be credited with one-third balance due

| | | |
|---|---:|---:|
| administrator, less one-third the cost of tombstone | $ 44 | 29 |
| Commission of guardian | 263 | 00 |
| Board, lodging and washing from September 1, 1879, to September 1, 1884 | 781 | 00 |
| Board, lodging and washing from September 1, 1884, to September 1, 1886 | 312 | 00 |
| One-third real estate expenses as per exhibit " A " | 536 | 65 |
| Expenditures as per exhibit " B " | 601 | 56 |
| Account of ward with Rawson Bros., as per exhibit " C " | 116 | 85 |
| One-third of interest in homestead, as per agreement | 266 | 66 |
| One-third the amount paid on the homestead | 900 | 85 |
| One-third the taxes for 1879 | 55 | 73 |
| One-third amount paid Krome and Hadley | 10 | 00 |
| | $3,888 | 59 |
| Balance due William | 1,997 | 40 |

In his account with Brittania he should be charged with $5,885.99, and should be credited with one-third balance due administrator less one-

| | | |
|---|---:|---:|
| third the cost of tombstone | $ 44 | 29 |
| Commission of guardian | 263 | 00 |
| Board, lodging and washing from September 1, 1889, to September 1, 1884 | 781 | 00 |
| Board and clothing during vacation of 1885 and 1886 | 63 | 00 |

Rawson v. Corbett.

| | | |
|---|---:|---:|
| One-third the real estate expenses as per exhibit "A" | 536 | 65 |
| Expenditures as per exhibit "B" | 1,783 | 36 |
| Account of ward with Rawson Bros. as per exhibit "C" | 207 | 05 |
| One-third of interest in homestead as per agreement | 266 | 66 |
| One-third the amount paid on the homestead | 900 | 85 |
| One-third the taxes for 1879 | 55 | 73 |
| One-third amount paid Krome and Hadley | 10 | 00 |
| | $4,911 | 59 |
| Balance due ward Brittania | 974 | 40 |
| In his account with Richie he should be charged with $5,885.99, and should be credited with one-third the balance due administrator less one-third the cost of tombstone | 44 | 29 |
| Commission of guardian | 263 | 00 |
| Board, lodging and washing from September 1, 1879, to September 1, 1884 | 781 | 00 |
| Board, lodging and washing from September 1, 1884, to March 2, 1887 | 402 | 00 |
| One-third the real estate expenses as per exhibit "A" | 536 | 65 |
| Expenditures as per exhibit "B" | 375 | 04 |
| Account of ward with Rawson Bros. as per exhibit "C" | 136 | 15 |
| One-third of interest in homestead as per agreement | 266 | 66 |
| One-third the amount paid on the homestead | 900 | 85 |
| One-third the taxes for 1879 | 55 | 73 |
| One-third the amount paid Krome and Hadley | 10 | 00 |
| | $3,771 | 37 |
| Balance due ward Richie | $2,114 | 62 |

It follows, therefore, that the judgment as found for each of the several wards was erroneous. The findings of the Circuit Court are in part affirmed and in part reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Affirmed in part and reversed in part and remanded.*